IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TANIS BERNARD,

        Plaintiff,

        vs.                Case No. 09-1247-JTM

KANSAS HEALTH POLICY AUTHORITY, ET.
AL.,

        Defendants.

MEMORANDUM AND ORDER

The present matter arises on defendants Don Jordan and Kansas Department of Social and

Rehabilitation Service's Joint Motion to Dismiss (Dkt. No. 21) and defendants Dr. Andrew Allison

and the Kansas Health Policy Authority's Joint Motion to Dismiss (Dkt. Nos. 25 and 27). For the

following reasons, the court grants in part and denies in part the defendants' motions.

**I. Factual Background**

Plaintiff, Tanis Bernard, is a 73 year-old woman who has resided at Kiowa Manor, a nursing

facility, since April 4, 1998. At all relevant times, plaintiff has been married to Otis T. Bernard

(Otis), a 75 year-old man. On November 19, 2007, plaintiff filed a request for assessment with the

Kansas Department of Social and Rehabilitation Services (SRS), providing that their combined

resources at the time of her admission to Kiowa Manor totaled $339,383.37. After allowing for the

community spouse's resource allowance and the institutionalized spouse's allowance, their available resources totaled $522,759.08.

Prior to that, on July 19, 2007, Otis purchased a single, premium, irrevocable annuity from Old Mutual Financial Life Insurance Company for $574,000 payable to him in monthly installments of $15,966.57 from August 19, 2007, until August 2010. He purchased another policy for $60,136.20 payable in monthly installments of $1,672.89 from January 2, 2008, until January 2011. The terms of the annuities provide: "the policy is non-transferable, non-assignable, non-commutable, non-surrenderable, totally and permanently irrevocable and has no cash value."

Plaintiff filed an application for Medicaid coverage to assist with payment of her nursing facility bill on November 19, 2007. The Kansas Health Policy Authority (KHPA) denied that application on April 17, 2008, by issuing a "Notice History" stating that "your countable resources exceed the maximum allowable amount of $2,000.00.01 for your household size." (Dkt. No. 1, para. 13). The notice further provided: "Current assets in your recently purchased annuities has been determined to be countable, putting you over the resources limit by several hundred thousand dollars as per KHPA Policy No. 2008-03-02, citing KEESM Section(s) 5130, 5630, 5631." (*Id.*).

The next day, plaintiff requested a hearing, and on March 11, 2009, a hearing officer for the KHPA issued a "Notice of Initial Order" reversing the decision of the KHPA. The KHPA filed a petition of error and on July 10, 2009, the KHPA State Appeals Committee issued a "Final Order" reversing the decision of the hearing officer. The final order stated: "The annuities purchased were a conversion of cash assets to another resource, not income. Once the annuity is reduced by the monthly income, the amount remaining should be viewed as a resource available to the Appellant."

As a result, plaintiff filed the present suit alleging violations of 42 U.S.C § 1396p and the

Supremacy Clause. Specifically, the plaintiff alleges:

> By virtue of the foregoing, Defendants KHPA and SRS have violated and are violating 42 U.S.C.§ 1396p(c)(1)(A), 42 U.S.C. § 1396p(c)(2)(I), 42 U.S.C. § 1396p(d)(2)(A)(ii) & (B) and the Federal policies and regulations pertaining to annuities, for which relief is available pursuant to 42 U.S.C. § 1983, by determining that Plaintiff is ineligible for Medicaid due to the annuity purchased by Plaintiff's spouse.

> By virtue of the foregoing, Defendants KHPA and SRS have, to the detriment of Plaintiff, violated and are violating the Supremacy Clause of the United States Constitution by determining that Plaintiff is ineligible for Medicaid under Kansas laws pertaining to annuities that are in direct conflict with the Federal laws pertaining to annuities or serve as an obstacle to the accomplishment of the purposes and objectives of those Federal laws.

(Dkt. No. 15, para. 35 and 37). All defendants have now moved to dismiss both claims.


## II. Legal Standard

First, defendants Allison and KHPA filed their Motion to Dismiss after filing an answer.

Under Fed. R. Civ. P. 12(b) a motion asserting an insufficient service of process defense "must be

made before pleading if a responsive pleading is allowed." However, Rule 12(h)(2) permits a court

to consider the defense of failure to state a claim upon which relief can be granted in a Rule 12(c)

motion for judgment on the pleadings. Therefore, the court may treat a 12(b)(6) motion as one under

Rule 12(c). *Thomas v. Travnicek*, No. 00-3360, 2003 WL 22466194, at *1 (D. Kan. Aug. 15, 2003).

The distinction between the two motions is purely formal because a court reviews a 12(c) motion

under the same standard as a Rule 12(b)(6) motion. Defendants' motions will all be analyzed under

the following 12(b)(6) standard.

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). The Tenth Circuit utilizes a two-step process when analyzing a motion to dismiss for failure to state a claim. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

The court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and are undisputed. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A court may also consider facts subject to judicial notice without converting the motion into one for summary judgment. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

### III. Conclusions of Law

Defendants' arguments in their respective motions are essentially the same; therefore, this court will consider the motions together. Defendants assert four arguments in their motions: (1) plaintiff's claims against KHPA and SRS are barred by Eleventh Amendment sovereign immunity; (2) plaintiff failed to state a claim under 42 U.S.C. § 1983; (3) plaintiff failed to show federal preemption supporting its Supremacy Clause claim; and (4) plaintiff failed to serve defendants or improperly served defendants. Defendants Jordan and the SRS also argue that plaintiff's claims must be dismissed based on the Statute of Limitations.

#### A. Eleventh Amendment Sovereign Immunity

Because Eleventh Amendment sovereign immunity goes to a court's subject matter jurisdiction, the court considers this issue first. *See Kirby v. Dallas County Adult Prob. Dep't.*, 359 Fed. App'x 27, 32 (10th Cir. 2009). *But* s*ee Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) ("The Amendment, in other words, enacts a sovereign immunity from suit, rather than a nonwaivable limit on the Federal Judiciary's subject-matter jurisdiction."). In their motions, defendants argue that plaintiff's claims, even if viable under § 1983, must be dismissed against the KHPA and the SRS because such a claim is barred by the Eleventh Amendment. Defendant Allison also argues he is entitled to sovereign immunity because plaintiff failed to identify the specific statute which Allison has a duty to enforce. In response, plaintiff argues only that the Eleventh Amendment does not bar suit against Allison or Jordan. For the following reasons, the court agrees with defendants that the Eleventh Amendment bars suit against SRS and KHPA. However, the court

also agrees with plaintiff that the Eleventh Amendment does not bar the suit against Allison and Jordan.

"Because of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity."[1] *Green v. Mansour*, 474 U.S. 64, 67-68 (1985). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) (holding that the Eleventh Amendment barred plaintiff's suit against state agency). "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'" *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). This bar applies regardless of the type of relief sought. *Pennhurst*, 465 U.S. at 100.

Plaintiff has sued both the Kansas SRS and the KHPA (both state entities). The state of Kansas has not consented to suit regarding Medicaid eligibility. And, no provision of the Social Security Act provides for waiver of the state's Eleventh Amendment immunity. *See Edelman*, 415

---

[1]The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another state, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "Even though the clear language does not so provide, the Eleventh Amendment has been interpreted to bar a suit by a citizen against the citizen's own State in Federal Court." *AMISUB (PSL), Inc. v. Colo. Dep't of Soc. Servs.*, 879 F.2d 789, 792 (10th Cir.1989) (citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890)).

U.S. at 674. Thus, plaintiff's claims against both the SRS and KHPA are dismissed. This court now turns to defendants Allison and Jordan.

The Supreme Court's decision in *Ex parte Young* created an exception to the general rule of sovereign immunity by providing that a suit challenging the constitutionality of a state official's action when enforcing state law is not one against the state itself. *Green*, 474 U.S. at 64; *see Ex parte Young*, 209 U.S. 123, 159-60 (1908). "*Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green*, 474 U.S. at 68. This exception does not apply to claims for retrospective relief. *Id.* at 68. Additionally, the exception does not apply in every case in which a plaintiff seeks prospective injunctive relief against a state official. *Coeur d'Alene*, 521 U.S. at 281-82 (holding that action which was the functional equivalent of a quiet title action did not fall under the *Ex parte Young* doctrine). The Tenth Circuit has provided three elements necessary for a suit to proceed against a state official. *Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior*, 160 F.3d 602, 609 (10th Cir. 1998). The requirements are: "(1) the plaintiffs are suing state officials, rather than the state itself; (2) the plaintiffs have alleged a non-frivolous violation of federal law; and (3) the plaintiffs seek prospective equitable relief, rather than retroactive monetary relief from the state treasury.'" *Lewis v. N. M. Dep't of Health*, 261 F.3d 970, 975 (10th Cir. 2001). The Supreme Court in *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, eliminated the requirement that the court also analyze whether the relief implicates special sovereignty interests. 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.") (quoting

*Coeur d'Alene*, 521 U.S. at 296 (O'Connor, J., concurring in part and concurring in the judgment)). Upon analysis of these elements, this court holds that plaintiff's claims meet the *Ex parte Young* exception, and defendants Allison and Jordan are not immune from suit under the Eleventh Amendment.

## 1. Suing State Officials

The *Ex parte Young* doctrine allows a plaintiff to sue state officials in their official capacity if their conduct constitutes an ongoing violation of federal law. *Lewis*, 261 F.3d at 976. The state cannot cloak such actions with immunity. *Id.* "That is, when state officials are arguably violating federal law, '[t]he state is not the real party in interest because the state cannot 'authorize' the officials to violate federal law.'" *Id.* (quoting *Elephant Butte*, 160 F.3d at 610). *But see Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) ("[T]he Eleventh Amendment bars a suit against a state official 'when the state is the real, substantial party in interest.'") (quoting *Pennhurst*, 465 U.S. at 100). "Hence, in allegedly violating federal law, the officials are stripped of their state authority and the Eleventh Amendment will not protect them from suit." *Id.* Here, defendants Allison and Jordan—Executive Director of KHPA and Secretary of the SRS—are state officials who exercise significant control over the implementation of Kansas's Medicaid program. Plaintiff claims these individuals, while acting under state authority, are violating federal law by determining that she is ineligible for Medicaid. Because plaintiff has sued Allison and Jordan, she has properly sued state officials, and this factor is met.

2. Alleging a Non-frivolous Violation of Federal Law

The second factor requires a determination of whether plaintiff alleged a non-frivolous violation of a federal law. *Id.* at 975. "The question of whether state officials violated federal law therefore affects both the initial immunity inquiry and the court's ultimate decision on the merits." *Id.* at 976. At this stage, the court asks only whether the claim is "wholly insubstantial and frivolous," rather than determining the legal merits of the claim. *Id.* Under this standard, the court concludes that plaintiff's claim is not wholly insubstantial and frivolous. As enunciated in Section III.B.2. of this Memorandum, plaintiff's claim under 42 U.S.C. § 1396p(c)(2)(B)(i) creates a binding obligation on the states by providing that "[an] individual shall not be ineligible for medical assistance by reason of paragraph (1) . . . ." 42 U.S.C. § 1396p(c)(2)(B)(i) (2000 & Supp. 2010). The words "shall not" are mandatory rather than precatory terms and create a binding obligation on the states. Given this specific language, the statute's mandate upon the states is not frivolous. Similarly, plaintiff's claim based on 42 U.S.C. § 1396p(d)(2)(A)(ii), (B), constitutes an allegation of a non-frivolous violation of federal law.

Plaintiff also alleges a violation of the Supremacy Clause of the United States Constitution in Count II. Although the court does not decide the merits of this claim in this Memorandum and Order, the court concludes the claim passes muster under this element because it is not wholly insubstantial or frivolous.

3. Seeking Prospective Equitable Relief

The final element requires that the plaintiff seek prospective equitable relief from defendants rather than retroactive monetary relief. *Lewis*, 261 F.3d at 977. In making this distinction, the court

asks "'not whether the relief will require the payment of state funds, but whether the relief will remedy future rather than past wrongs.'" *Id.* (quoting *Elephant Butte*, 160 F.3d at 611). Prospective relief gives life to the Supremacy Clause because "[r]emedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law." *Green*, 474 U.S. at 68 (citing *Pennhurst*, 465 U.S. at 102). Retrospective compensatory relief is insufficient to overcome the mandate of the Eleventh Amendment. *See id.*

The plaintiff here seeks declaratory and injunctive relief: plaintiff asks the court to enter a declaratory judgment that defendants erred in determining plaintiff ineligible for Medicaid, and also asks the court to enter a temporary restraining order, preliminary injunction, and permanent injunction ordering defendants to cease denying her Medicaid coverage. Plaintiff's claim for injunctive relief does not run afoul of the Eleventh Amendment because the relief only "requires 'that officials conform their future actions to federal law.'" *See Lewis*, 261 F.3d at 978 (quoting *Elephant Butte*, 160 F.3d at 611). However, plaintiff's request for declaratory relief is barred "[b]ecause the Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" *Johns*, 57 F.3d at 1554-55 (quoting *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)).

Plaintiff also seeks relief pursuant to 42 U.S.C. § 1396a(a)(34) (2000 & Supp. 2010). It appears neither the Tenth Circuit nor this District have decided this question. However, *Edelman* and its progeny provide some helpful principles for determining the grey area between prospective and retrospective relief. *See Coeur d'Alene*, 521 U.S. at 278. "As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night." *Edelman*, 415 U.S. at

667. In *Edelman*, the Court held that the Eleventh Amendment barred a district court decree which ordered retroactive payment of benefits to the plaintiff. 415 U.S. at 678. The funds for such an award would necessarily come from the state funds, thus resembling a monetary award against the state rather than the prospective relief granted under *Ex parte Young*. *Id.* at 665. Such a retroactive award of benefits constituted an impermissible award of damages in violation of the Eleventh Amendment. *Id.* But, *Edelman* also recognized that adverse fiscal consequences on state treasuries, as a necessary result of compliance with a prospective order, does not violate the Eleventh Amendment. *Id.* at 667-68; *see ANR Pipeline Co v. Lafaver*, 150 F.3d 1178, 1189 (10th Cir. 1998) (stating "the [*Ex parte Young*] doctrine will allow injunctive relief that might have a substantial ancillary effect on a state treasury"), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). Further, in *Quern v. Jordan*, the Court distinguished its holding in *Edelman* and held that the Eleventh Amendment did not bar a court order requiring state officials to send an explanatory notice to plaintiffs advising them that a state administrative procedure existed if they desire to have the state determine whether they may be eligible for past benefits. 440 U.S. 332, 346-49 (1979). In holding so, the court found that the notice "simply apprises plaintiff class members of the existence of whatever administrative procedures may already be available under state law by which they may receive a determination of eligibility for past benefits" and was not the type of retroactive award barred by *Edelman*. *Id.* at 347-48.

The holding of *Edelman* does not apply in this case. The retroactive payments authorized by 42 U.S.C. § 1396a(a)(34) is not a damages award for past liability.[2] If ordered, it would be an

[2]Title 42 U.S.C. § 1396a(a)(34) (2000 & Supp. 2010) provides:
A State plan for medical assistance must provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before

incident of complying with the court's prospective order. The back payments authorized by the statute, therefore, would be necessary to comply with the court's prospective order. *See Morenz v. Wilson-Coker*, 415 F.3d 230, 237 (2d Cir. 2005) (holding that back payments authorized under 42 U.S.C. § 1396a(a)(34) are only ancillary to prospective relief and "does not run afoul of the Eleventh Amendment"). Therefore, this court concludes that the Eleventh Amendment does not bar the relief authorized by the above statute, and this element is met.

In summary, plaintiff's claims against the SRS and KHPA are dismissed under the Eleventh Amendment. However, plaintiff's claims against Allison and Jordan survive to the extent that they seek only injunctive relief and relief under 42 U.S.C. § 1396a(a)(34). Plaintiff's prayer for declaratory relief is barred.

*B. Alleging a Claim Under 42. U.S.C. § 1983*

In Count I of the Complaint, plaintiff asserts a private cause of action based on four provisions in Title XIX of the Social Security Act, otherwise known as the Medicaid Act: 42 U.S.C. §§ 1396p(c)(1)(A), 1396p(c)(2)(B)(i), 1396p(d)(2)(A)(ii), (B). The Supreme Court has held that actions may be brought against state actors to enforce rights created by federal statutes or the Constitution under 42 U.S.C. § 1983.[3] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002) (citing

_____

the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished.

[3]Title 42 U.S.C. § 1983 (2000) provides:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall

*Maine v. Thiboutot*, 448 U.S. 1 (1980)). "[T]he primary question in determining whether a statute will support a claim under § 1983 is whether 'Congress intended to confer individual rights upon a class of beneficiaries.'" *Hobbs ex rel Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009) (quoting *Gonzaga*, 536 U.S. at 285). In *Blessing v. Freestone*, the Supreme Court provided three factors to examine when making this determination:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

520 U.S. 329, 340-41 (1997) (internal quotations omitted). *Gonzaga* made it clear that anything short of an unambiguously conferred right in the statute will not support a cause of action under § 1983. 536 U.S. at 283. "Section 1983 provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States. Accordingly, it is *rights*, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of that section." *Id.* (emphasis in original). It is only a violation of rights, not laws, which gives rise to § 1983 actions. *Id.* Additionally, "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . under § 1983." *Id.* at 286. Using this analytic framework, the court now turns to the main inquiry—whether the statute unambiguously confers rights on the plaintiff.

---

not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Under this step of the analysis it is important to analyze separately each statutory provision in order to determine if any unambiguously confers rights on the plaintiff. In doing so, this court will use the *Blessing* factors as modified by *Gonzaga*. Without specifying the right violated, plaintiff bases Count I on four separate statutory provisions: 42 U.S.C. §§ 1396p(c)(1)(A), 1396p(c)(2)(B)(i), 1396p(d)(2)(A)(ii), (B). The court will analyze each separately.

1. 42 U.S.C. § 1396p(c)(1)(A)

Regarding plaintiff's claim under 42 U.S.C. § 1396p(c)(1)(A), this court concludes that the statute does not support a § 1983 claim because it does not unambiguously confer rights on the plaintiff. This section provides:

> In order to meet the requirements of this subsection for purposes of section 1396a(a)(18) of this title, the State plan must provide that if an institutionalized individual or the spouse of such individual (or, at the option of a State, a noninstitutionalized individual or the spouse of such individual) disposes of assets for less than fair market value on or after the look-back date specified in subparagraph (B)(i), the individual is ineligible for medical assistance for services described in subparagraph (C)(i) (or, in the case of a noninstitutionalized individual, for the services described in subparagraph (C)(ii)) during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E).

42 U.S.C. § 1396p(c)(1)(A) (2000 & Supp. 2010).

Under the first *Blessing* factor, Congress must have intended that the provision in question benefit the plaintiff. 520 U.S. at 340-41. Congress must use "rights-creating" language which clearly invokes an individual entitlement upon a benefitted class of people. *Gonzaga*, 536 U.S. at 287. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289 (2001) (quoting *California v. Sierra Club*, 452 U.S. 287, 294 (1981)).

14

The statutory provision here runs afoul of the first *Blessing* factor because Congress did not intend for it to benefit the plaintiff. Rather than conferring a benefit on the plaintiff, the statute imposes a binding obligation on the state to impose a plan which makes an individual ineligible for medical assistance if the person or person's spouse disposes of assets for less than fair market value. *See* 42 U.S.C. § 1396p(c)(1)(A). The statute speaks in terms of "individuals" but only in relation to imposing an obligation on the states. The statute itself grants no rights to a plaintiff. *See Gonzaga*, 536 U.S. at 284 ("For a statute to create such private rights, its text must be 'phrased in terms of persons benefitted.'") (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 692 n.13 (1979)). Additionally, the statute focuses on the state rather than the individual protected by requiring the state plan to comport with the requirements of 42 U.S.C. § 1396p(c)(1)(A). The language in this statute is similar to other statutory provisions the Supreme Court has held do not create private causes of action under § 1983.

In *Suter v. Artist M.*, the Supreme Court held that provisions of the Child Welfare Act requiring the state to have a "plan" to make "reasonable efforts" to keep children out of foster homes did not create a private cause of action under § 1983. 503 U.S. 347, 363-64 (1992). Because the act "conferred no specific, individually enforceable rights, there was no basis for private enforcement, even by a class of the statute's principal beneficiaries." *Gonzaga*, 536 U.S. at 281 (citing *Suter*, 503 U.S. at 357). The Court in *Blessing* also rejected a plaintiff's § 1983 claim because the statutory provision at issue focused on the state rather than benefits conferred on the plaintiff. 520 U.S. at 340-44. The *Gonzaga* Court explained *Blessing* in the following manner:

> Because the provision focused on "the aggregate services provided by the State," rather than "the needs of any particular person," it conferred no individual rights and thus could not be enforced by § 1983. We emphasized: "To seek redress through §

> 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation
> of federal *law*."

536 U.S. at 282 (quoting *Blessing*, 520 U.S. at 340) (emphases in original). Similarly, the *Gonzaga*

Court foreclosed a plaintiff's private cause of action based on certain provisions of the Family

Educational Rights and Privacy Act of 1974 (FERPA). 536 U.S. at 287. "FERPA's provisions speak

only to the Secretary of Education, directing that '[n]o funds shall be made available' to any

'educational agency or institution' which has a prohibited 'policy or practice.'" *Id.* (quoting 20

U.S.C. § 1232g(b)(1)). Focusing on the state rather than the individual "clearly does not confer the

sort of 'individual entitlement' that is enforceable under § 1983." *Id.*

By imposing requirements on the state and omitting rights-creating language, Congress did

not unambiguously confer rights on the plaintiff under 42 U.S.C. § 1396p(c)(1)(A); thus, this

provision is not enforceable through § 1983, and defendants' motions are granted as to this

provision.


2. 42 U.S.C. § 1396p(c)(2)(B)(i)

Plaintiff's claim under 42 U.S.C. § 1396p(c)(2)(B)(i) requires a different conclusion. This

section provides:

> An individual shall not be ineligible for medical assistance by reason of paragraph
> (1) to the extent that—the assets—were transferred to the individual's spouse or to
> another for the sole benefit of the individual's spouse.

42 U.S.C. § 1396p(c)(2)(B)(i) (2000 & Supp. 2010). Unlike § 1396p(c)(1)(A), this provision

satisfies all prongs of the *Blessing* test. First, Congress unquestionably intended the provision to

benefit the plaintiff. The statute specifically provides that an individual shall not be ineligible for

medical assistance (a benefit) solely because covered assets were transferred for the benefit of the

individual's spouse. 42 U.S.C. § 1396p(c)(2)(B)(i). The statute also speaks in terms of the individual benefitted rather than the person regulated by giving the individual a benefit, instead of directing the state to act or not to act in a certain way. *Compare* § 1396p(c)(1)(A) (stating "[i]n order to meet the requirements of this subsection for purposes of section 1396a(a)(18) of this title, *the State plan must* provide . . ."), *with* § 1396p(c)(2)(B)(i) (stating "[a]n *individual shall not be ineligible* for medical assistance . . .") (emphasis added). The focus of § 1396p(c)(2)(B)(i) confers an individual entitlement, as required under *Gonzaga*. 536 U.S. at 287. The Tenth Circuit in *Hobbs* even indicated in dicta that this provision contains the type of language that creates a private cause of action. 579 F.3d at 1181 (stating "[a]lthough subsection (c)(2)(B) contains the type of mandatory language that might create a private cause enforceable under § 1983, it is not at issue in this case").

The language of § 1396p(c)(2)(B)(i) is also similar to language, which the Supreme Court and other courts have held sufficient to be enforceable under § 1983. *See Wilder v. Va. Hosp. Ass'n.*, 496 U.S. 498 (1990) (holding that healthcare providers could bring a § 1983 suit to enforce a reimbursement provision of the Medicaid Act, because it explicitly conferred monetary benefits on the plaintiffs); *Wright v. Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 430 (1987) (allowing a § 1983 suit by tenants to recover past overcharges under a rent-ceiling provision of the Public Housing Act because the provision unambiguously conferred "a mandatory [benefit] focusing on the individual family and its income"); *Sabree ex rel. Sabree v. Richman*, 367 F.3d 180, 189, 193-94 (3d Cir. 2004) (holding that language under the Medicaid Act requiring that a state "'must provide' plaintiffs with 'medical assistance,' including ICF/MR services, with 'reasonable promptness'" was sufficient to support a private cause of action under § 1983) (quoting 42 U.S.C. §§ 1396a(a)(8), (a)(10), 1396d(a)(15)).

This section also meets the second prong of *Blessing* because the statute is not so "vague and amorphous" that its enforcement would "strain the judicial competence." *See* 520 U.S. at 340-41. The statute clearly states that an individual shall not be ineligible for medical assistance because covered assets were transferred solely for the benefit of the covered individual's spouse—leaving little room to dispute what right it protects. *See* 42 U.S.C. § 1396p(c)(2)(B)(i). Determining whether a state has violated that provision would not strain the judicial competence.

The provision also satisfies the third prong of the *Blessing* test because it unambiguously imposes a binding obligation on the states. The words "shall not" in § 1396p(c)(2)(B)(i) make it clear the state has an obligation not to deprive a covered individual of medical assistance solely because the individual's spouse transferred covered assets for the spouse's own benefit. *See id.* As required by *Blessing*, the words "shall not" are mandatory terms, rather than a precatory ones, and are dissimilar to the cases which failed this prong of the test. *See* 520 U.S. at 340-41. In *Suter*, the Adoption Assistance and Child Welfare Act required states receiving funds for adoption to have a "plan" and to make "reasonable efforts" to keep children out of foster care. 503 U.S. at 358. The *Suter* Court found no basis for a § 1983 suit and held:

> Careful examination of the language relied upon by respondents, in the context of the entire Act, leads us to conclude that the "reasonable efforts" language does not unambiguously confer an enforceable right upon the Act's beneficiaries. The term "reasonable efforts" in this context is at least as plausibly read to impose only a rather generalized duty on the State, to be enforced not by private individuals, but by the Secretary in the manner previously discussed.

*Id.* at 363. Similarly, in *Blessing*, a provision of the Social Security Act requiring states receiving federal child-welfare funds to "substantially comply" with certain requirements designed to provide timely child support payments lacked the type of mandatory language necessary to support a private cause of action under § 1983. 520 U.S. at 342-47. Finally, in *Gonzaga*, the Court found that

18

provisions of FERPA which required states to "comply substantially" with federal regulations failed unambiguously to impose a binding obligation on the states. 536 U.S. at 288. A comparison between those cases, and the statutory provision here, compels the conclusion that Congress unambiguously imposed a binding obligation on the states under § 1396p(c)(2)(B)(i); therefore, this prong of the *Blessing* test is met.

After examining the text of § 1396p(c)(2)(B)(i), it is clear that Congress intended to confer individual rights on certain individuals. Absent a contrary directive in the statutory structure or congressional preclusion (analyzed below), plaintiff may enforce this provision by means of a § 1983 suit.

### 3. 42 U.S.C. § 1396p(d)(2)(A)(ii), (B)

Section 1396p(d)(2)(A)(ii) and (B), also supports a claim under § 1983. Section 1396p(d)(2)(A)(ii) provides:

> For purposes of this subsection, an individual shall be considered to have established a trust if assets of the individual were used to form all or part of the corpus of the trust and if any of the following individuals established such trust other than by will: The individual's spouse.

Section 1396p(d)(2)(B) provides:

> In the case of a trust corpus of which includes assets of an individual (as determined under subparagraph (A)) and assets of any other person or persons, the provisions of this subsection shall apply to the portion of the trust attributable to the assets of the individual.

Like § 1396p(c)(2)(B)(i), this provision meets all prongs of the *Blessing* test. First, Congress intended the provision to benefit the plaintiff by providing how an individual's trust assets will be considered by the state. *See* § 1396p(d)(2)(A)(ii), (B). These provisions also meet the last two

prongs of *Blessing* because they are stated in mandatory terms, "an individual *shall be considered* to have established a trust if . . . ." 42 U.S.C. § 1396p(d)(2)(A)(ii) (emphasis added). And, once again, the terms are not so "vague or amorphous" their enforcement would "strain judicial competence." *See* § 1396p(d)(2)(A)(ii), (B). These provisions do not contain vague and ambiguous terms such as those found in *Suter*, *Blessing*, and *Gonzaga*. *Suter*, 503 U.S. at 358 ("reasonable efforts"); *Blessing*, 520 U.S. at 342 ("substantially comply"); *Gonzaga*, 536 U.S. at 288 ("comply substantially"). The language at issue is comparable to § 1396(c)(2)(B)(i), which does support an individual cause of action under § 1983. As such, Congress intended to confer individual rights in § 1396p(d)(2)(A)(ii) and (B) if not barred by the statutory structure or congressional preclusion. The court now turns to the issue of statutory structure.

### 4. Statutory Structure

Pursuant to *Gonzaga*, this court must also examine the structure of the statute, not just the text of the specific provisions. 536 U.S. at 286. As the following analysis shows, the court's opposite conclusions regarding § 1396p(c)(1)(A) and §§ 1396p(c)(2)(B)(i), (d)(2)(A)(ii) and (B) are not inconsistent. The statutory structure of Title XIX contains provisions that create and do not create individual rights enforceable under § 1983. *See Sabree*, 367 F.3d at 192 (concluding that "[s]ection 1396, the appropriations and general introductory statement, cannot neutralize the rights-creating language of Sections 1396a(a)(1), 1396d(a)(15), and 1396a(a)(8)"). A conclusion that one provision does not support a private cause of action under § 1983 does not necessarily condemn another cause of action based on a different provision. *Compare Blessing*, 520 U.S. at 344-46, *and Hobbs*, 579 F.3d 1181-83, *with Wilder*, 496 U.S. at 509, *and Sabree*, 367 F.3d at 193-94.

The Supreme Court held in *Wilder* that a provision in Title XIX of the Social Security Act requiring reimbursement based on rates that a state finds are reasonable and adequate was enforceable under § 1983. 496 U.S. at 524.[4] Even though the Tenth Circuit, in *Hobbs*, held that three provisions of Title XIX—§ 1396p(d)(4)(A) and §§ 1396a(a)(10)(C)(i), (a)(17)—did not create private causes of action enforceable under § 1983, it did not foreclose that possibility for other Title XIX provisions. *Hobbs*, 579 F.3d at 1181. Additionally, while *Hobbs* recognized that §§ 1396a(a)(10)(C)(i), (a)(17), which it termed the "methodology provisions," did not phrase directives at the persons benefitted, it acknowledged that several courts have held that another provision of 1396a(a) does confer individual rights. 579 F.3d at 1182 (citing *Spry v. Thompson*, 487 F.3d 1272, 1275-76 (9th Cir. 2007) (holding that § 1396a(a)(10)(A)(i) created a private cause of action); *Watson v. Weeks*, 436 F.3d 1152, 1159 (9th Cir. 2006) (same); *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 603 (5th Cir. 2004) (same); *Sabree*, 367 F.3d at 189-90 (same); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472, 478-79 (8th Cir. 2002) (same); *Westside Mothers v. Haveman*, 289 F.3d 852, 863 (6th Cir. 2002) (same); *Miller ex rel. Miller v. Whitburn*, 10 F.3d 1315, 1319 (7th Cir. 1993) (same)).

---

[4]The provision in question provided:
"[A] State plan for medical assistance must-

. . . . .

"provide . . . for payment . . . of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State . . .) *which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities* in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access . . . to inpatient hospital services of adequate quality." 42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V) (emphasis added).

*Wilder*, 496 U.S. at 502-03 (quoting 42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V) (emphasis in *Wilder*)).

Unlike *Hobbs*, plaintiff here has advanced a claim based in rights-creating provisions of Title XIX—§§ 1396p(c)(2)(B)(i); 1396p(d)(2)(A)(ii), (B). Like the provisions in *Wilder* and § 1396a(a)(10)(A)(i), these sections do provide for a private cause of action. For the above reasons, this court finds that the statutory structure of the Social Security Act, and Title XIX in particular, does not preclude a finding that the above provisions support an individual cause of action under § 1983.

5. Congressional Preclusion

After a plaintiff makes a showing that a given statute unambiguously confers a right, the state may rebut that presumption by showing that Congress either expressly prohibited suit or that Congress provided a comprehensive remedial scheme, which bars individual suits. *Blessing*, 520 U.S. at 346 ("Because petitioner does not claim that any provision of Title IV-D expressly curtails § 1983 actions, she must make the difficult showing that allowing § 1983 actions to go forward in these circumstances "would be inconsistent with Congress' carefully tailored scheme.") (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 107 (1989)). "The burden to demonstrate that Congress has expressly withdrawn the remedy is on the defendant" and "'[w]e do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy' for the deprivation of a federally secured right." *Golden State Transit*, 493 U.S. at 106 (quoting *Smith v. Robinson*, 468 U.S. 992, 1012 (1984)).

Defendants here do not argue that Congress explicitly precluded a § 1983 suit in this instance and Title XIX contains no provision explicitly precluding such actions; therefore, the court will

analyze whether there exists a remedial scheme sufficiently comprehensive to replace § 1983 suits. Only twice has the Supreme Court held a remedial scheme sufficiently comprehensive to supplant § 1983. *Blessing*, 520 U.S. at 347; *see Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13-15 (1981) (holding that the Federal Water Pollution Control Act and the Marine Protection, Research, and Sanctuaries Act of 1972 had a comprehensive remedial scheme because "[t]hese Acts contain unusually elaborate enforcement provisions, conferring authority to sue for this purpose both on government officials and private citizens"); *Smith*, 468 U.S. at 1010-11 (holding that the Education of the Handicapped Act supplanted § 1983 suits because "the Act establishes an elaborate procedural mechanism to protect the rights of the handicapped children. The procedures not only ensure that hearings conducted by the State are fair and adequate. They also effect Congress' intent that each child's individual educational needs be worked out through a process that begins on the local level and includes ongoing parental involvement, detailed procedural safeguards, and a right to judicial review"). Title XIX does provide a state administrative hearing. 42 U.S.C. § 1396a(a)(3) (2000 & Supp. 2010).[5] However, the administrative hearing is not the type of comprehensive remedial scheme necessary to displace a § 1983 claim. *Blessing*, 520 U.S. at 347 ("We have also stressed that a plaintiff's ability to invoke § 1983 cannot be defeated simply by '[t]he availability of administrative mechanisms to protect the plaintiff's interests.'") (quoting *Golden State Transit*, 493 U.S. at 106); *see also Wilder*, 496 U.S. at 523 ("The availability of state administrative procedures ordinarily does not foreclose resort to § 1983.").

---

[5] A State plan for medical assistance must—provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness. 42 U.S.C. § 1396a(a)(3) (2000 & Supp. 2010).

Because Title XIX only provides for a state administrative hearing, its remedial scheme does not rise to the level necessary as seen in *Sea Clammers* and *Smith*. As such, Congress has not precluded plaintiff's ability to pursue a § 1983 suit.

*C. Supremacy Clause*

Under Count II of the Amended Complaint, plaintiff alleges that defendants:

> [V]iolated and are violating the Supremacy Clause of the United States Constitution by determining that Plaintiff is ineligible for Medicaid under Kansas laws pertaining to annuities that are in direct conflict with the Federal laws pertaining to annuities or serve as an obstacle to the accomplishment of the purposes and objectives of those Federal laws.

(Dkt. No. 15, para. 37). Defendants argue that Count II must be dismissed because plaintiff cannot show federal preemption, which is necessary to sustain a violation of the Supremacy Clause.[6] "Determining whether Congress *intended* to preempt state law is the ultimate touchstone of preemption analysis." *Ramsey Winch, Inc. v. Henry*, 555 F.3d 1199, 1204 (2009) (emphasis in original). Defendant further argues that because plaintiff failed to specify which state and federal statutes were at issue in Count II, the court must dismiss this claim under *Twombly*. However, defendant fails to explain how that fact alone warrants dismissal. In response, plaintiff cites *Elizabeth Blackwell Health Ctr. v. Knoll*, 61 F.3d 170 (3d Cir. 1995), which held that a state law conflicting with the Hyde Amendment to the Medicaid law violated the Supremacy Clause. While *Blackwell* provides a good example of preemption analysis, it has little bearing on this case.

---

[6]The Supremacy Clause of the United States Constitution states:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.
U.S. CONST. art. VI. cl. 2.

Nevertheless, this court finds that it is premature to dismiss Count II of the Amended Complaint. At this stage in the record, and due to the brevity of the parties' briefing on this issue, the court will revisit this issue at a later date.

### D. 12(b)(5) Insufficient Service of Process

Defendants argue the court should dismiss the Complaint under Fed. R. Civ. P. 12(b)(5) for insufficient service of process. Because the court has dismissed the claims against the SRS and KHPA (see Section III.A.), the court considers only service on Allison and Jordan.

A federal court lacks personal jurisdiction over a defendant if service of process is insufficient under Rule 4. *See Nicks v. Brewer*, No. 10-1220, 2010 WL 4868172, at *4 (D. Kan. Nov. 23, 2010). The plaintiff has the burden of showing by a preponderance of the evidence that jurisdiction is proper. *United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 797 (10th Cir. 2002). "The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Taylor v. Osawatomie State Hosp.*, No. 07-2346, 2008 WL 2891011, at *1 (D. Kan. July 24, 2008).

Fed. R. Civ. P. 4(j)(2) governs service upon a state officer served in his official capacity. *See* FED. R. CIV. P. 4(j)(2); *see also Bell v. City of Topeka, Kan.*, No. 06-4026, 2007 WL 628188, at *3 (D. Kan. Feb. 26, 2007) ("Official capacity suits are treated in all respects as suits against the underlying entity."); *Lewis v. Wyandotte/Leavenworth Area on Aging*, No. 10-2109, 2010 WL 2735563, at *2 (D. Kan. July 9, 2010) (rejecting defendants 12(b)(5) motion to quash service because defendant sued in his official capacity was properly served at his place of business); *cf. Dudley v. N. Central Reg'l Office*, No. 09-2027, 2009 WL 1162879, at *2 (D. Kan. Apr. 27, 2009)

("Under Fed. R. Civ. P. 4(i)(2), in order to serve an agency or employee of the United States sued in an official capacity, a party must serve the United States and also send a copy of the summons and complaint by registered or certified mail to the agency or employee."). Under Rule 4(j)(2) service on a state organization must be made by "delivering a copy of the summons and complaint to its chief executive officer; or serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such defendant." FED. R. CIV. P. 4(j)(2)(A)-(B). Under Kansas law, there is a specific method for serving an authority (KHPA) and a governmental agency (SRS). Service on a public authority can be accomplished "by serving the clerk or secretary or, if the secretary is not found, any officer, director or manager thereof." KAN. STAT. ANN. § 60-304(d)(4) (2010). A state governmental agency may be served by "serving the attorney general or assistant attorney general." *Id.* § 60-304(d)(5); *see Copeland v. Robinson*, 25 Kan. App.2d 717, 721-22, 970 P.2d 69, 73-74 (1998) (official capacity suits on government agencies trigger Kan. Stat. Ann. § 60-304(d)(5)).

On May 12, 2010, plaintiff attempted service on Jordan by leaving summons with Senior Administrative Assistant, Legal Division, of the SRS. Plaintiff attempted to serve Allison in a similar manner by serving a front-desk employee of the KHPA. It appears that each employee represented that they were authorized to accept service for the named defendants. Plaintiff did not serve defendants in the manner required under Rule 4(j)(2) or Kan. Stat. Ann. § 60-304(d). Instead, plaintiff argues that the employees who accepted service were authorized employees under Rule

4(e)(2)(C). However, this argument fails because defendants were sued in their official capacities, which triggers Rule 4(j)(2), rather than service on an individual under Rule 4(e)(2)(C).[7]

While plaintiff did not serve the defendants in the manner required by Rule 4(j)(2) or Kan. Stat. Ann. § 60-304(d), plaintiff's attempted service may be saved if she substantially complied with the requirements for service pursuant to Kan. Stat. Ann. § 60-204.[8] Before there can be valid service under § 60-204, there must be substantial compliance with some method of service under Kansas law. *See Briscoe v. Getto*, 204 Kan. 254, 256-57, 462 P.2d 127 (1969). Substantial compliance with the requirements of service and awareness of the action are all that is necessary under § 60-204. *Pedi Bares, Inc. v. P & C Food Markets, Inc.*, 567 F.2d 933, 936 (10th Cir. 1977); *Fulcher v. City of Wichita*, 445 F. Supp.2d 1271, 1275 n.1 (D. Kan. 2006) ("Before there can be valid service pursuant to K.S.A. 60-204, there must be substantial compliance with some method of service and, thereafter, irregularities and omissions will be cured by awareness of the action.").

This court finds that plaintiff's service on defendants, while not technically proper, constituted substantial compliance under § 60-204. The court also finds that defendants have not been denied due process. *Nikwei v. Ross Sch. of Aviation, Inc.*, 822 F.2d 939, 945-46 (10th Cir.

---

[7]Even if plaintiff sued defendants in their individual capacities service was still insufficient. *See* Fed. R. Civ. P. 4(e); Kan. Stat. Ann. § 60-304(a); *see also Grayson v. Kansas*, No., 06-2375, 2007 WL 1259990, at *4 (D. Kan. Apr. 30, 2007) ("Service on [defendants] at their places of business—before attempted service at their dwellings or through their agents—does not comply with any method of service described under Rule 4(e) or Kansas law.").

[8]Chapter 60, section 240 states:
The methods of serving process set out in article 3 of this chapter constitute sufficient service of process in all civil actions and proceedings, but are alternatives to and do not restrict different methods specifically provided by law. Substantial compliance with any method of serving process effects valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court that might affect the party or the party's status or property.
Kan. Stat. Ann. § 60-204 (2010).

1987) (stating courts should generally overrule technical objections to service of process if defendants have not been denied due process). There is no allegation the summons and Complaint did not reach the named defendants. Defendants have received notice of the lawsuit and have demonstrated by the present motions, their ability to defend the lawsuit. Therefore, defendants' 12(b)(5) motion is denied.

However, while the court finds service is sufficient, plaintiff failed to file attachments "A" through "J" which it indicates are attached to the Amended Complaint. Because these attachments were attached to the original Complaint and their content is not in dispute, this court will allow plaintiff to re-file its Amended Complaint to include the attachments. However, because Jordan was not a party to the Original Complaint, plaintiff must re-serve him with the Amended Complaint and attachments in the manner provided above.

*E. Statute of Limitations*

Last, defendants Jordan and the SRS argue the court must dismiss plaintiff's Complaint against them because the statute of limitations has run. Congress provided no statute of limitations in § 1983 civil rights suits. "The statute of limitations for claims under § 1983 'is drawn from the personal-injury statute of the state in which the federal district court sits.'" *Lyons v. Kyner*, 367 Fed. App'x 878, 881 (10th Cir. 2010) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)).Thus, this court applies Kansas's two-year statute of limitations for personal injury actions to plaintiff's § 1983 claim. *See* KAN. STAT. ANN. § 60-513(a)(4) (1996) ("The following actions shall be brought within two years: An action for injury to the rights of another, not arising on contract, and not herein enumerated."). "'A civil rights action accrues when facts that would support

28

a cause of action are or should be apparent.'" *Lyons*, 367 Fed. App'x at 882 (quoting *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995)).

Plaintiff filed her original Complaint on August 7, 2009, and her Amended Complaint on May 7, 2010. The KHPA first denied plaintiff Medicaid benefits on April 17, 2008. Plaintiff appealed that decision to a hearing officer, who reversed the decision of the KHPA on March 11, 2009. Subsequently, the KHPA filed a Petition in Error to the KHPA State Appeals Committee and on July 10, 2009, the committee reversed the decision of the hearing officer and reinstated the initial order denying plaintiff Medicaid benefits. Defendants argue the injury accrued on April 17, 2008—the initial date the KHPA denied Medicaid benefits. Defendants' argument is without merit. Plaintiff accurately argues the final decision by the KHPA State Appeals Committee is the proper accrual date. The Tenth Circuit has held a civil rights action accrues when the facts supporting a cause of action are or should be apparent. *Lyons*, 367 Fed. App'x at 882. Here, facts supporting a cause of action—alleged improper denial of benefits—only became known on July 10, 2009, when the decision became final. From March 11, 2009, until July 10, 2009, plaintiff's Medicaid benefits had been reinstated and no facts supporting a cause of action were present. A contrary finding would have the effect of forcing plaintiff to file suit even though the administrative agency had given her a favorable decision. Therefore, because the cause of action properly accrued upon the final denial of Medicaid benefits—a date well within the two-year statute of limitations—defendants' motion is denied on this ground.

IT IS ACCORDINGLY ORDERED this 28th day of February, 2011, that defendants' Motions to Dismiss are granted in part and denied in part. The claims against defendants SRS and

KHPA are dismissed under the Eleventh Amendment. Defendants Allison and Jordan will not be dismissed and the claims pending against them may go forward consistent with this Order.

IT IS FURTHER ORDERED that plaintiff must re-serve Jordan with the Amended Complaint and attachments in the manner provided in Section III.D.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE